77789. WILSON v. WHEELER'S, INC.
(378 SE2d 498)

McMURRAY, Presiding Judge.

Plaintiff Wilson brought an action against Wheeler's, Inc. ("Wheeler's") and alleged that defendant maliciously prosecuted her for issuing a bad check. Wheeler's denied the material allegations of the complaint and moved for summary judgment. The undisputed facts are as follows:

On July 24, 1985, plaintiff Wilson and her husband opened a joint checking account at the First National Bank of Atlanta (bank). The bank issued to Mr. and Mrs. Wilson several "COUNTER CHECK[S]" with the Wilsons' account number preprinted at the bottom of each check. A series of boxes appear above the preprinted ac-

count number and above the boxes there are directions to "FILL IN ACCOUNT NUMBER."

On August 3, 1985, Mrs. Wilson went to "Wheeler's Building Materials Store" and purchased "two pieces of trellis and some timbers to use in landscaping her back yard." Mrs. Wilson gave the "cashier" a "COUNTER CHECK" for $22.52 and informed the "cashier" that the instrument was "a counter check on her new account." (An erroneous account number is written in the boxes on the "COUNTER CHECK" above the preprinted account number.) The "cashier" examined Mrs. Wilson's driver's license and printed on the back of the "COUNTER CHECK" plaintiff's birthday, her Social Security number and the following address: "3335 Hunting Lodge Rd. Marietta." (The Wilsons then resided at 3335 Hunter's Lodge Road in Marietta, Georgia.)

On August 6, 1985, the bank returned Mrs. Wilson's "COUNTER CHECK" to Wheeler's with the notations, "NOT PROCESSED" and "UNABLE TO LOCATE." On August 20, 1985, Wheeler's posted, via "certified mail," a "dishonored check notice" to Mrs. Wilson. The notice was "returned to [Wheeler's] marked both 'unclaimed' and 'addressess (sic) unknown.'"

On September 18, 1985, Joe Lowrey presented his affidavit in the Magistrate Court of Cobb County, Georgia and deposed "that Betty L. Wilson (hereinafter called the accused) did . . . on the 3rd day of August, in the year 1985, in Cobb County, Georgia, commit the offense of Bad check (Misdemeanor) violating O.C.G.A. Section 16-9-20, for that the said accused did unlawfully make and draw upon First Atlanta, a certain check, dated Aug. 3, 1985, payable to the order of Wheelers [sic], for the sum of $22.52, signed Betty L. Wilson, and uttered and delivered the same to Wheeler's, 1300 Canton Hwy. Marietta, Ga. in exchange for a present consideration as a check of its full face value, then and there knowing that accused did not have an account with the bank at the time the check was delivered." Mr. Lowrey further deposed that he executed his affidavit so "that a warrant may issue for the arrest of the accused." In response, a magistrate issued a "CRIMINAL WARRANT" for the arrest of plaintiff, listing her address as "3335 Hunting Lodge Rd. Marietta, Georgia."

On October 10, 1988, a Cobb County sheriff's deputy went to the Wilsons' home at 3335 Hunter's Lodge Road in Marietta, Georgia and, at about 1:00 that afternoon, plaintiff's son called his mother at work and "put [the deputy] on the line. . . ." (Plaintiff deposed in her affidavit that she did not receive Wheeler's notice of certified mail and that this call was the first time she became "aware of any problem with the check to Wheeler's . . . .") Mrs. Wilson promised the deputy sheriff that she would "turn herself in to the Cobb County Sheriff's Office and jail that afternoon between 4:30 and 5:00."

Mrs. Wilson immediately contacted her husband and he contacted "a person in the warrant office" at the Cobb County Sheriff's Department. "As a result of that conversation[, Mr. Wilson] called Wheeler's on Canton Road, asking to speak with the Manager." He was informed by a Wheeler's employee "that the Manager could not speak with him then because he was in a meeting." Mr. Wilson "then proceeded to the Wheeler [sic] business place and upon arriving at about 3:00 p.m. asked to speak with the Manager . . . ." He was again informed "that the Manager was in a meeting." Mr. Wilson "gave his business card with his home phone number to [the employee and requested] that the Manager please call him as soon as possible, that he needed to speak with him . . . regarding a warrant that Wheeler's had issued for his wife." Mr. Wilson went home, but he received no call from Wheeler's.

At about 4:30 that afternoon, Mr. Wilson contacted his wife at her place of employment and made arrangements to meet her at the Cobb County Sheriff's Office. Mrs. Wilson arrived at the sheriff's office at about 5:00 p.m. and she was there arrested and later released after her husband posted a $300 bond. Mrs. Wilson was subsequently charged, via accusation, for issuing a bad check to Wheeler's.

On February 21, 1986, an assistant solicitor of the State Court of Cobb County, Georgia recommended that the charge against Mrs. Wilson not be further prosecuted. On a form styled "NOLLE PROSEQUI," the assistant solicitor stated that Mrs. Wilson "had opened a new bank account. The check in question was a counter-check with [Mrs. Wilson's] account number on it. The check was returned for the reason—unable to locate. [Mrs. Wilson] received no notice." On February 24, 1986, the State Court of Cobb County consented to the State's recommendation not to further prosecute Mrs. Wilson. From this evidence, the trial court granted Wheeler's motion for summary judgment. This appeal followed. *Held*:

1. "A criminal prosecution which is carried on maliciously and without any probable cause and which causes damage to the person prosecuted shall give him a cause of action." OCGA § 51-7-40. "In malicious prosecution actions '(w)ant of probable cause is a question for the jury, under the direction of the court. The question of probable cause is a mixed question of law and fact. Whether the circumstances alleged to show probable cause existed is a matter of fact, to be determined by the jury, but whether they amount to probable cause is a question of law for the court.' *Hearn v. Batchelor*, 47 Ga. App. 213, 214 (170 SE 203) (1933); see *Day Realty Associates v. McMillan*, 247 Ga. 561 (277 SE2d 663) (1981). The material facts in [the case sub judice are] essentially undisputed. Therefore, whether or not probable cause existed was for determination by the court. *Ayala v. Sherrer*, 135 Ga. App. 431, 434 (218 SE2d 84) (1975)." *Melton v. La-*

*Calamito*, 158 Ga. App. 820, 822 (2 b), 823 (282 SE2d 393).

From this perspective, we observe that " ' "[i]n actions for malicious prosecution, the question is, not whether the plaintiff [Mrs. Wilson] was guilty, but whether the defendant [Wheeler's] had *reasonable cause to so believe*—whether the circumstances were such as to create in the mind of the defendant a *reasonable belief* that there was probable cause for the prosecution. (Cit.) Probable cause is defined to be the existence of such facts and circumstances as would excite the *belief* in a reasonable mind, that the person charged was guilty of the crime for which he was prosecuted." ' *Tanner-Brice Co. v. Barrs*, 55 Ga. App. 453 (2) (190 SE 676) (1937). 'While (probable cause) need not approach absolute certainty as to the facts, and it is not inconsistent with a considerable element of doubt, it must be more than mere conjecture or unfounded suspicion. Beyond this, *the belief must be supported by appearances known to the defendant at the time* [emphasis supplied]. . . . The appearances must be such as to lead a reasonable man to set the criminal proceeding in motion. The defendant is not necessarily required to verify his information, where it appears to be reliable; *but where a reasonable man would investigate further before beginning the prosecution, he may be liable for failure to do so* [emphasis supplied]. All such factors as the reliability of the source, the availability of further information and the difficulty of obtaining it, the reputation of the accused, and his opportunity to offer an explanation, and the apparent necessity of prompt action, are to be considered in determining whether it was reasonable to act without verification.' Prosser, [Law of Torts § 119] at 842." *Melton v. La-Calamito*, 158 Ga. App. 820, 822 (2 b), 823, 824, supra.

Before initiating the prosecution against Mrs. Wilson, Wheeler's had received Mrs. Wilson's "COUNTER CHECK" from the bank with the notations, "NOT PROCESSED" and "UNABLE TO LOCATE." Also, Wheeler's "dishonored check notice" had been returned and marked, "unclaimed" and "addressess (sic) unknown." We cannot say these circumstances alone demand a determination that probable cause existed as a matter of law for Mrs. Wilson's arrest.

" 'While a prosecutor need not be fully satisfied of the truth of the charge that he makes in his affidavit, and is not required to have a sufficient statement of fact to guarantee a conviction, nevertheless, where slight diligence would have brought to his attention facts which would have shown conclusively that there could be no conviction, whether or not he is guilty of malicious prosecution is a question of fact to be determined by the jury.' *Auld v. Colonial Stores*, 76 Ga. App. 329 (3) (c) (45 SE2d 827) (1947)." *Voliton v. Piggly Wiggly*, 161 Ga. App. 813, 814 (288 SE2d 924). The circumstances of the case sub judice authorize a finding that "slight diligence" by Wheeler's would

have revealed Mrs. Wilson's intentions in drawing the "COUNTER CHECK." In this regard, the evidence showed that the Wilsons were easily accessible in that they had resided at the same Cobb County address for over five years prior to the incident which forms the basis of this action. In fact, the Wilsons' home was only "five to six miles" from Wheeler's place of business. Further, the evidence shows that the Wilsons are thoroughly law-abiding citizens who have successfully raised three children, "the eldest of which has graduated from college and is in the United States Navy, the middle son is a student at Norfork State College and the youngest is a tenth (10th) grader in the Cobb County School System." The record also shows that Mr. Wilson "is the Regional Sales Manager for the Gillette Safety Razor Company . . ." and that Mrs. Wilson is employed as "a Histologist at Kennestone Medical Center." Most persuasively, however, is evidence showing that the Wilsons contemporaneously resolved a similar misunderstanding with a local department store after the Wilsons' bank returned a "COUNTER CHECK" that was drawn on the same account to the department store with the notation, "UNABLE TO LOCATE." (A notation on the face of the "COUNTER CHECK" that was returned to the department store indicates that a store representative "phoned" Mrs. Wilson after the "COUNTER CHECK" was returned unpaid.) Moreover, evidence showing that Wheeler's failed to respond to Mr. Wilson's inquiries prior to his wife's arrest raises genuine issues of material fact as to whether Wheeler's acted maliciously in failing to investigate before resorting to criminal prosecution. *Sanfrantello v. Sears, Roebuck & Co.*, 118 Ga. App. 205 (1) (163 SE2d 256). Consequently, the trial court erroneously concluded that the evidence demanded a determination that probable cause existed for Mrs. Wilson's arrest.

2. Next, we turn to Wheeler's contention that it is immune from prosecution under OCGA § 16-9-20 (h). This Code subsection provides, in pertinent part, as follows: "Any party holding a worthless check or instrument and giving notice in substantially similar form to that provided in subparagraph (a) (2) (B) of this Code section shall be immune from civil liability for the giving of such notice and for proceeding as required under the forms of such notice; provided, however, that, if any person shall be arrested or prosecuted for violation of this Code section and payment of any check, draft, or order for the payment of money shall have been refused because the maker or drawer had no account with the bank or other depository on which such instrument was drawn, the one causing the arrest or prosecution shall be deemed to have acted with reasonable or probable cause even though he or it has not mailed the written notice or waited for the ten-day period to elapse."

The language of this Code subsection is inapplicable for two rea-

sons. First, the evidence is conflicting as to whether Mrs. Wilson received notice of Wheeler's "dishonored check notice" and there is no evidence that Mrs. Wilson received "notice in substantially similar form to that provided in subparagraph (a) (2) (B) of [OCGA § 16-9-20]." OCGA § 16-9-20 (h). Secondly, the notation "UNABLE TO LOCATE" is not conclusive evidence that Mrs. Wilson "had no account with the bank . . . on which [the returned] instrument was drawn . . . ." OCGA § 16-9-20 (h). (In fact, the undisputed evidence shows that the Wilsons had a solvent checking account at the bank with the same account number as is preprinted on the "COUNTER CHECK" that was returned to Wheeler's. See *Voliton v. Piggly Wiggly*, 161 Ga. App. 813, 814, supra.) Consequently, since Wheeler's is not immune under OCGA § 16-9-20 (h) and since a genuine issue of material fact remains as to whether Wheeler's acted reasonably in prosecuting Mrs. Wilson, the trial court erred in granting Wheeler's motion for summary judgment.

*Judgment reversed. Pope and Benham, JJ., concur.*

DECIDED JANUARY 30, 1989 —
REHEARING DENIED FEBRUARY 10, 1989 — 

*Duard R. McDonald*, for appellant.
*Barry V. Smith*, for appellee.