## S91G0377. K-MART CORPORATION v. COKER.
### (410 SE2d 425)

FLETCHER, Justice.

Ira Lynn Coker sued K-Mart Corporation for malicious prosecution after she was acquitted on a shoplifting charge. Following a jury verdict in her favor, the trial judge granted K-Mart a judgment notwithstanding the verdict. The Court of Appeals reversed on the ground that Coker did not have the necessary criminal intent to shoplift and therefore K-Mart lacked probable cause. *Coker v. K-Mart Corp.*, 197 Ga. App. 701 (399 SE2d 249) (1990). We granted certiorari and reverse the Court of Appeals.

On December 14, 1984, while waiting to pick up lay-away merchandise, Coker removed a torn lipstick package from a display rack in the cosmetics department of a K-Mart store. She walked to the cologne department where she removed the tube of lipstick from the package. She laid the package, which had the price tag on it, on the counter and browsed through several departments in the store with the lipstick tube in her hand. When she saw her husband with the lay-away merchandise in the parking lot, she threw the lipstick in an open handbag hanging on a store rack and started to leave without the handbag or lipstick.

K-Mart's security officer stopped her as she was exiting and requested that she come back into the store. The assistant manager asked about the tube of lipstick and she pointed it out to the security officer. He removed the lipstick from the handbag. Store employees searched Coker's purse and body, but found no store property. Coker

refused the employees' request to sign a statement that they called an incident report and she labeled a confession. At K-Mart's request, a police officer issued Coker a citation for shoplifting and took her into custody.

The magistrate found that K-Mart had probable cause to prosecute Coker for shoplifting and bound the case over to the State Court of Fulton County for trial. After the state court judge directed a verdict of acquittal, she filed this action in superior court. A jury returned a verdict for Coker, which the judge overturned, finding that K-Mart had probable cause to believe she had committed the offense of shoplifting.

1. The lack of probable cause is the gravamen of a malicious prosecution action. *Day Realty Assoc. v. McMillan*, 247 Ga. 561, 562 (277 SE2d 663) (1981); *Darnell v. Shirley*, 31 Ga. App. 764, 765 (122 SE 252) (1924). Probable cause is absent when the circumstances would satisfy a reasonable person that the accuser had no ground for proceeding except a desire to injure the accused. OCGA § 51-7-43. Although a jury normally decides whether probable cause exists, the judge determines the issue when the material facts are undisputed. Id.; *West v. Baumgartner*, 228 Ga. 671, 676 (187 SE2d 665) (1972). A judge's denial of a motion for a directed verdict of acquittal in the criminal case is a binding determination that probable cause exists; a magistrate's determination of probable cause at a preliminary hearing is not conclusive. *Monroe v. Sigler*, 256 Ga. 759, 761-762 (353 SE2d 23) (1987). Because the parties in this case do not dispute the facts and the state court judge granted Coker a directed verdict of acquittal, the existence of probable cause is a question for the court.

2. A person commits the offense of shoplifting when he:

with the intent of appropriating merchandise to his own use without paying for the same or to deprive the owner of possession thereof or of the value thereof, in whole or in part, does any of the following:

(1) Conceals or takes possession of the goods or merchandise of any store or retail establishment;

. . . .

(3) Transfers the goods or merchandise of any store or retail establishment from one container to another. . . .

OCGA § 16-8-14. Thus, the statute provides three forms of mens rea, punishing persons who have the intent "(1) to appropriate the property to [one's] own use without paying for it, (2) to deprive the owner of the possession of it or (3) to deprive the owner of the value of it."

P. Kurtz, Criminal Offenses and Defenses in Georgia 429 (2nd ed. 1987). By adding the second and third alternatives, the legislature indicated that the mens rea requirement is not stringent. See generally id. at 426, 429-430 (finding the mens rea in the shoplifting statute broader than the intent to steal required for a theft by taking).

In construing the criminal intent required for shoplifting, the Court of Appeals stated that a merchant must examine a shopper's intent before seeking an arrest for shoplifting. See *Coker*, 197 Ga. App. at 704 (399 SE2d at 252). Although we agree that criminal intent is a material element of shoplifting, we disagree that a store employee must determine the shopper's subjective intent before seeking an arrest and prosecution under the shoplifting statute.

The Court of Appeals' decision overlooks that criminal intent may be inferred from the "words, conduct, demeanor, motive, and all other circumstances connected with the act for which the accused is prosecuted." OCGA § 16-2-6; see *Lee v. State*, 102 Ga. 221, 223 (29 SE 264) (1897) (intent "may be inferred from the circumstances [or] ascertained by acts and conduct"). For example, the Court of Appeals in another shoplifting case inferred the defendant's intent to appropriate merchandise for his own use and to deprive the owner of possession of those goods from the defendant's admission that he removed the items from the store where he worked. *Secrist v. State*, 145 Ga. App. 391, 394 (243 SE2d 599) (1978); see also *Commonwealth v. Balboni*, 26 Mass. App. 750 (532 NE2d 706) (1989) (finding criminal intent from defendant's action and demeanor in surveying store, taking cigarettes, and lacking the money to pay for them).

3. Coker's intent is inferred from her conduct. She removed the lipstick from its package, abandoned the empty package with the price tag, walked through the store for at least 20 minutes with the lipstick in her hand, failed to return the lipstick to a nearby service desk as she left, and instead discarded the tube in a handbag on a rack where no employee would be likely to discover the lipstick and return it to its original package. From these acts, K-Mart employees could infer that Coker intended to deprive the store of both the possession and value of the lipstick tube. Her failure to remove the lipstick from the store does not negate the criminal intent that the statute requires. See *Watts v. State*, 224 Ga. 596 (163 SE2d 695) (1968); *Mathis v. State*, 194 Ga. App. 498 (391 SE2d 130) (1990).

4. Under the circumstances, we find that Coker's acts would cause reasonably prudent persons to believe they had probable cause to prosecute her for the offense of shoplifting. Therefore, Coker may not recover for malicious prosecution.[1] This holding comports with

---

[1] We do not condone the way K-Mart employees pressured Coker to sign a statement

the policy of the courts and this state to disfavor malicious prosecution actions and to encourage citizens to bring to justice persons who are apparently guilty. See *Day Realty*, 247 Ga. at 55.

*Judgment reversed. All the Justices concur, except Smith, P. J., Bell and Benham, JJ., who dissent.*

SMITH, Presiding Justice, dissenting.

We granted a writ of certiorari to the Court of Appeals in *Coker v. K-Mart*, 197 Ga. App. 701 (399 SE2d 249) (1990), and asked the parties to address "whether the damages were excessive under the facts and the applicable law." The appellee, Mrs. Coker, was the plaintiff below in a civil action for malicious prosecution. OCGA § 51-7-40 et seq. The jury returned a verdict in her favor and against K-Mart, but the trial court granted K-Mart a judgment notwithstanding the verdict. The Court of Appeals reversed, and this Court reversed again.

This is not a criminal case. This is a civil case. In a criminal trial, the State must prove the defendant's (the plaintiff in the tort action) intent. That is not what is required in a tort case for malicious prosecution. In a civil trial for the tort of malicious prosection, the plaintiff (the defendant in the criminal trial) must prove that the defendant (the party who caused the criminal prosecution to go forward) lacked probable cause to go forward with the criminal prosecution of the plaintiff.

The plaintiff, in her first enumeration of error before the Court of Appeals, argued that she had proven the defendant's lack of probable cause as defined by the tort law, and that the trial court erred by granting K-Mart a judgment notwithstanding the verdict. The majority of this Court followed the trial court's error by examining the plaintiff's conduct under the criminal law of shoplifting to the exclusion of examining the defendant's conduct under the tort law of malicious prosecution. The majority at p. 747 compounded the error by asserting that the rationale for depriving the plaintiff of her recovery under the tort law was that

criminal intent may be inferred from the "words, conduct, demeanor, motive, and all other circumstances connected with the act for which the accused is prosecuted." OCGA § 16-2-6; see *Lee v. State*, 102 Ga. 221, 223 (29 SE 264) (1897).

---

nor the way she was paraded in handcuffs down the store aisle lined by employees. Their conduct, however, is not the basis for a malicious prosecution action, although it may be considered in a false arrest or imprisonment action. See OCGA § 51-7-60; *K-Mart v. Adamson*, 192 Ga. App. 884 (386 SE2d 680) (1989).

The criminal Code section cited above, *Lee, supra,* (the almost 100-year-old "hog" case), and the other criminal cases cited by the majority are being improperly used to deprive the plaintiff of her rightful recovery under the tort law. The majority cites several malicious prosecution cases in Division 1 however, these are cited only for their procedural value. Divisions 2 through 4 all concentrate on proving Mrs. Coker's criminal intent. Mrs. Coker's alleged criminal intent is not the focus of a malicious prosecution action, and the majority's insistence upon attempting to prove her guilt is an especially cruel way to strip her of her recovery.[2]

The essential elements of a malicious prosecution action are: (1) Criminal prosecution of the plaintiff; (2) pursuant to a valid warrant, accusation, or summons; (3) termination of the criminal prosecution in the plaintiff's favor; (4) defendant's malicious institution of the prosecution; (5) defendant's lack of probable cause to institute the prosecution; and (6) plaintiff's damage. *Ellis v. Knowles,* 90 Ga. App. 40 (81 SE2d 884) (1954).

The defendant caused Mrs. Coker to be tried for the offense of shoplifting, pursuant to his sworn accusation, and the court directed a verdict of acquittal in her favor; we need not be concerned with elements (1)-(3) above. The jury awarded damages, thus, element (6) does not concern us. Because malice may be inferred from a total lack of probable cause, OCGA § 51-7-44, the only issue before this Court is whether or not the defendant in the malicious prosecution action lacked probable cause to proceed with a criminal prosecution against Mrs. Coker.

The plaintiff has the burden of showing that the defendant lacked probable cause. OCGA § 51-7-43. We are not concerned here with the bar to recovery for false arrest in alleged shoplifting cases. OCGA § 51-7-60. That bar allows store owners special immunity from false arrest and detention in alleged shoplifting cases when the owner can prove by competent evidence that

> the plaintiff had so conducted himself or behaved in such manner as to cause a man of reasonable prudence to believe that the plaintiff, at or immediately prior to the time of the detention or arrest, was committing the offense of shoplift-

---

[2] It was up to the jury in the criminal action to find Mrs. Coker's intent; however, they never had the opportunity as the trial court directed a verdict of acquittal at the end of the State's evidence. Additionally, during this tort action *everyone*, at one time or another, including the trial judge and the attorney for K-Mart stated that Mrs. Coker was not guilty of shoplifting. The K-Mart attorney stated: "She is innocent, there is no doubt about that. The system has prevailed as it should. . . ." The trial judge stated: "I don't think that you were guilty of shoplifting and if I had been called upon to decide the question of whether you were guilty or innocent, I would have found you not guilty. . . ."

ing, as defined by Code Section 16-8-14. . . .

The bar to recovery for false arrest and detention of suspected shoplifters, OCGA § 51-7-60, is a bar to recovery in false arrest and false detention actions; it does not, nor was it ever intended to, provide the probable cause for proceeding with a criminal prosecution of shoplifting. Its sole purpose is to provide store owners with immunity so that they can conduct reasonable investigations to determine whether there is probable cause to proceed with a criminal prosecution after they have detained and arrested a suspected shoplifter. As stated by the Court of Appeals in *Colonial Stores v. Fishel*, 160 Ga. App. 739, 740 (288 SE2d 21) (1981):

> The purpose of allowing a suspected shoplifter to be detained is to allow the merchant to conduct an investigation to determine if there is probable cause to believe that the person was shoplifting. However, where a reasonable man would investigate before beginning a criminal prosecution, he may be liable for his failure to do so. *Melton v. LaCalamito*, 158 Ga. App. 820 (2b) (282 SE2d 393) (1981).

The plaintiff in a malicious prosecution action has a heavy burden in proving that the defendant lacked probable cause, and the General Assembly has defined lack of probable cause to proceed with a criminal prosecution in OCGA § 51-7-43 as follows:

> Lack of probable cause shall exist when the circumstances are such as to satisfy a reasonable man that the accuser [defendant] had no ground for proceeding but his desire to injure the accused [plaintiff]. Lack of probable cause shall be a question for the jury, under the direction of the court.

Ten years before the criminal case upon which the majority relies, *Lee v. State*, supra, was decided, this Court, in a "tort" action for malicious prosecution, approved certain jury charges. For almost 100 years the courts have continued to approve of and follow the language set out in *Coleman v. Allen*, 79 Ga. 637, 640-641 (5 SE 204) (1887) as follows:

> "Probable cause means nothing more than reasonable grounds. Probable cause is that apparent state of facts which seems to exist after reasonable and proper inquiry." . . .
> "Now, whilst no man should be deterred from prosecuting a case on the criminal side of the court, where he honestly believes, after due and proper inquiry — either upon his own knowledge, or upon reliable information furnished by others,

— that a crime has been committed, yet he must not act hastily or without ordinary caution or reasonable diligence in instituting a prosecution, and if he so acted without reasonable diligence, and hastily and unreasonably, he is responsible for damages." . . . "See whether the defendant acted on probable cause and without malice or not; in other words, find out what his diligence was as to this matter. Take it all into consideration and see whether he acted with ordinary care, and as a man of ordinary prudence would act under the same circumstances."

These standards which apply to malicious prosecution actions, have been, until today, consistently followed by our courts. "[P]robable cause is that apparent state of facts which seems to exist after reasonable and proper inquiry, and recognizes the duty of caution and avoidance of haste." *Auld v. Colonial Stores*, 76 Ga. App 329, 335 (45 SE2d 827) (1947) expressly following *Coleman*, supra. In *Sanfrantello v. Sears, Roebuck & Co.*, 118 Ga. App. 205, 207 (163 SE2d 256) (1968) the court held:

Probable cause is that apparent state of facts existing after reasonable and proper inquiry; the prosecutor is under a duty of caution and avoidance of haste. [*Auld*, supra, 76 Ga. App. at 335]; *Coleman v. Allen*, 79 Ga. 637, 640-642 (5 SE 204, 11 ASR 449).

The Court of Appeals in *McMillan v. Day Realty Assoc.*, 156 Ga. App. 660, 662 (275 SE2d 352) (1980) (rev'd on other grounds, 247 Ga. 561 (277 SE2d 663) (1981)) stated that the critical issue in ascertaining if the defendant acted without probable cause

is the rule enumerated in *Sanfrantello v. Sears, Roebuck & Co.* [,supra,] that "[p]robable cause is that apparent state of facts existing after reasonable and proper inquiry [with the understanding that the defendant] is under a duty of caution and avoidance of haste."

The Court of Appeals the following year in *Melton v. LaCalamito*, 158 Ga. App., supra at 824, quoted from Prosser, Law of Torts, § 119 at 842 (4th ed. 1971) as follows:

"While [probable cause] need not approach absolute certainty as to the facts, and it is not inconsistent with a considerable element of doubt, it must be more than mere conjecture or unfounded suspicion. Beyond this, the belief must be supported by appearances known to the defendant at the

time, and a prosecution instituted without probable cause cannot be justified by anything, short of guilt in fact, which comes to the knowledge of the defendant later. . . . The appearances must be such as to lead a reasonable man to set the criminal proceeding in motion. The defendant is not necessarily required to verify his information, where it appears to be reliable; but where a reasonable man would investigate further before beginning the prosecution, he may be liable for failure to do so. All such factors as the reliability of the source, the availability of further information and the difficulty of obtaining it, the reputation of the accused, and [her] opportunity to offer an explanation, and the apparent necessity of prompt action, are to be considered in determining whether it was reasonable to act without verification."

The Court of Appeals in *Medoc Corp. v. Keel*, 166 Ga. App. 615, 617 (305 SE2d 134) (1983) approved the following charge to the jury based upon the language in *Melton*, supra, "a defendant may be liable for failing to investigate before instigating a criminal prosecution where a reasonable person would have investigated. . . ." Later, the Court of Appeals in *Wilson v. Wheeler's, Inc.*, 190 Ga. App. 250 (378 SE2d 498) (1989) followed *Melton*, supra.

In the case before us today, the evidence established that the defendant made no inquiry, much less a "due and proper inquiry." *Coleman*, supra, 79 Ga. at 641. The evidence also shows that the defendant acted " 'without reasonable diligence, and hastily and unreasonably, [thus] he is responsible for damages.' " Id.

The plaintiff correctly argued before the Court of Appeals that the trial court erred in granting K-Mart's motion for judgment notwithstanding the verdict. Additionally the plaintiff argued that the "Trial Judge expand[ed] the evidence for the benefit of the defendant. . . ." A careful examination of the transcript reveals that no one observed the plaintiff drop the lipstick in the K-Mart handbag. The trial court order might lead one to believe that all of the acts were observed, but the emphasized portion indicates the acts that no one observed before the warrantless arrest was made. The order states:

Clearly, when the plaintiff took the contents of a package out of the package, laid the empty package in another department of the store, while keeping the contents in her closed hand and subsequently traveling throughout the store *before placing the lipstick into a purse on display for sale,* these acts would cause a reasonably prudent person familiar with the shoplifting statute to believe that the offense of shoplifting had in fact occurred. [Emphasis supplied.]

No one observed Mrs. Coker toss the lipstick into the K-Mart handbag. The defendant only obtained that information because she willingly told the store manager where the lipstick was located. The trial court and the majority, anxious to scrutinize the plaintiff's conduct, failed to inform us that no one saw her put the lipstick in the K-Mart handbag. The majority states that from her acts, "K-Mart employees could infer that Coker intended to deprive the store of both the possession and value of the lipstick tube." Majority at p. 747. A reasonable person could infer that Mrs. Coker did not intend to deprive the store of the possession and value of the lipstick when she left the lipstick in the defendant's possession, although not in its proper place, and willingly took the defendant to the lipstick when the manager asked about it. Compare *Watts v. State*, 224 Ga. 596 (163 SE2d 695) (1968).

Now, we will shift our focus from the alleged criminal conduct of the plaintiff to the proper focus, the conduct and duty of the defendant in this tort action. The alleged shoplifting occurred in a K-Mart in Roswell, Georgia, on a very busy night, ten days before Christmas. The defendant observed the plaintiff browsing around the store for a period of approximately one and one-half hours. During that time he observed her pick up a package with a tube of lipstick inside, carry the package to a near-by counter, open the lipstick, roll the lipstick up and look at the lipstick, roll the lipstick back down, leave the package on the counter, and walk around the store with the lipstick in her hand. Later he observed her leaving the store. She was between the double doors at the front of the K-Mart on her way to the parking lot when the defendant tapped her on the shoulder, showed her his badge, identified himself as the K-Mart security guard, and requested her to step back into the store with him. Mrs. Coker submitted to his request, and at that point she was under arrest. OCGA § 17-4-1. Mrs. Coker obeyed his request to go toward the back of the store. About half way to the back, the manager of K-Mart stopped her, showed her a lipstick package, and asked her if she had seen "the lipstick that belonged in that pack" and she said, "Yes, sir, I will show you where it is. . . ." Mrs. Coker, the manager, and the defendant walked to the front of the store to the handbag department. Mr. Coker joined them at this time. Mrs. Coker pointed to an open handbag hanging on a K-Mart display. The defendant lifted the "lipstick off the top of the paper that was in the bag."

The defendant instructed Mrs. Coker to go to an office in the back of the store. Mrs. Coker testified that the defendant did not at the time he retrieved the lipstick, nor at any time, ask why the lipstick was in the K-Mart handbag.

As soon as they arrived in the office, the defendant asked her if she had stolen anything from K-Mart. When she said "no" he asked

her if she knew "that shoplifting was moving one article from one area of the store to another one. . . ." On cross-examination she answered affirmatively when she was asked if the defendant also told her that moving merchandise from one container to another was shoplifting.[3] She told him that she did not know that and he called her a liar

> and he insisted on calling me a liar numerous times and he tried to get me to sign a statement that I was guilty and he asked me, well, I told him that I was not a shoplifter, that I would take a lie detector test, and I got real upset.

The tort defendant was under a duty of diligence and caution. No one had seen the plaintiff toss the lipstick into the K-Mart handbag. Once the plaintiff showed the defendant where the lipstick was located within the store he had a duty to make a reasonable inquiry, but that is not what the evidence shows. The evidence indicates that the defendant never asked the plaintiff why the lipstick was in the K-Mart handbag. Rather than ask the plaintiff any questions, he requested Mrs. Coker to empty her purse. The contents of her purse were poured out on a table, and "they went through every item in there just as closely as possible. . . ." No K-Mart merchandise was found.

The defendant was not required to believe anything that the plaintiff might say, but he had duty of diligence, caution, and investigation, especially after the only item he thought was stolen was found in the store. Additionally his warrantless arrest and subsequent warrantless search of the plaintiff's purse created a heightened duty. According to Mr. Coker's testimony, after the defendant searched the

---

[3] Moving "one article from one area of the store to another . . ." is not shoplifting, neither is moving merchandise from one container to another. If it was, a shopper could not take milk from the dairy container and place it in a shopping cart, and store owners would have discretion to arrest and prosecute randomly. That part of the shoplifting law was intended to prevent people from, for example, removing a $10 product, placing it in a $1 container, and purchasing the $10 item for only $1, thus, depriving the owner of the full $10 value.

Justice Bell cited his own opinion in *State v. Mulkey*, 252 Ga. 201, 204 (312 SE2d 601) (1984) in *Wilkins v. Dept. of Human Resources*, 255 Ga. 230, 233 (337 SE2d 20) (1985) when he stated:

> In construing statutes we are to look for the intent of the General Assembly and to construe them so as not to result in unreasonable consequences, but to square with common sense and sound reasoning.

Additionally this Court in construing the shoplifting statute, OCGA § 16-8-14 stated in *Watts v. State*, supra, 224 Ga. at 598 that the statute

> conveys a definite warning as to the conduct forbidden, measured by common understanding and practices. It defines with sufficient certainty the acts which are proscribed and informs a person of ordinary intelligence with reasonable precision what acts it is intended to prohibit so that he may know what acts he should avoid.

plaintiff's purse, the defendant

> again wanted her to sign the paper and he started getting angry, I mean really the man lost his cool, I mean lost all control it seems like . . . his expression of his voice changed and calling her a liar on several occasions; and I finally asked him not to do that anymore, not to be calling her a liar because I had been with her for twenty-five years and I knew that she wasn't lying and he said, well, he had been with the city police department in Marietta for seven and a half years and he knew when somebody was lying and she wasn't signing and there was another girl in there . . . and then they mentioned something about searching [Mrs. Coker.]"

The defendant had the lipstick that he thought the plaintiff had stolen, a careful search of the plaintiff's purse had not rewarded the defendant with the evidence he needed to prosecute her, his threats to embarrass her in front of her family and put her in jail for 12 months had been unsuccessful, and his misstatements of the law did not scare her into signing. At this point, it would be difficult to find that the defendant acted without haste or with ordinary caution or reasonable diligence; however, his next action precluded any finding of reasonableness. The defendant asked the manager and Mr. Coker to leave the room and according to Mrs. Coker a female employee "search[ed] my body." Again, no K-Mart merchandise was found.

When Mr. Coker reentered the room his wife was upset and crying and he tried to calm her. She asked for a drink of water and they told her that they did not have "water for the public." While Mr. Coker was attempting to calm his wife the security defendant kept insisting that she sign the paper.

The only personal question the defendant asked Mrs. Coker was whether or not she had children. Mrs. Coker testified that after she answered affirmatively

> he asked me had I ever been embarrassed in front of my children and I told him no and he said well, lady, you're going to be and he was very angry and he said, "I will give you one more opportunity to sign this paper or you're going to be prosecuted. . . ."

She kept insisting that she had done nothing wrong and that she would not sign what the security officer told her "was a confession of guilt. . . ."

The undisputed evidence showed that the defendant was angry and out of control. Mr. Coker, who had a heart condition, was also getting upset and he finally said to the defendant:

> Go ahead and embarrass her, . . . she wasn't signing for something that she hadn't done . . . and I said if you have got to call the police, go ahead and call them or whatever and I said I need to get her out.

When Mr. Coker was asked why he wanted to get Mrs. Coker out of there he responded that it was because she was "nervous and . . . I wanted to get her away from [the defendant]."

It was not until Mr. Coker told the defendant to call the police that he picked up the phone to call, but he again shoved the paper toward Mrs. Coker telling her it was one last chance. Mrs. Coker refused, and the defendant called the police. During cross-examination Mr. Coker testified that the defendant told Mrs. Coker that he would let her go and he would not prosecute her if she would sign the paper.

When the police arrived, Mrs. Coker was placed in handcuffs with her hands behind her back and escorted to the front of the store. Mr. Coker testified that approximately 40 or 50 employees were lined up in the aisles watching her being "parade[d]" out of the store.

The defendant swore out a shoplifting accusation against Mrs. Coker stating that Mrs. Coker was guilty of shoplifting while in K-Mart because she transferred

> merchandise, to-wit: 1 Cutex lipstick valued at $1.88, to her own use, or deprive the owner of possession thereof or the value thereof, in whole or in part, contrary to the laws of said State, the good order, peace and dignity thereof.[4]

If the defendant had made any sort of reasonable inquiry he would have found that after a full day's work, the plaintiff and her husband, both tired and hungry, came to K-Mart to pick-up a television for their daughter. It was only because Mr. Coker was forced to wait for the television that Mrs. Coker wandered aimlessly around the store for one and one-half hours. The defendant would have also found that Mr. Coker was already very irritated about the long wait and when Mrs. Coker saw him in the parking lot she tossed the lipstick she had intended to purchase in an open K-Mart purse on a K-Mart rack in the K-Mart store so she could hurry outside and not cause her husband any further annoyance. If he had inquired he would have found that the Cokers have been married over 25 years,

---

[4] OCGA § 16-8-14 provides, in pertinent part,
[a] person commits the offense of . . . shoplifting when he . . . with the intent of appropriating merchandise to his own use without paying for the same or to deprive the owner of possession thereof or of the value thereof, in whole or in part, does any of the following: . . . (3) Transfers the goods or merchandise of any store . . . from one container to another.

have children and grandchildren. He could have found that Mrs. Coker was employed as a quality control inspector, she has been a long-time, active member of her church. He could have found that she had been in her community longer than she had been married. He could have found that she never had a criminal record. He could have found out that the Cokers had over $500 worth of merchandise purchased from K-Mart in their car. He could have found that Mr. Coker had $300 in cash in his pocket. The defendant did not inquire into any of these things. He made no inquiry, other than what is stated above that was intended to intimidate the plaintiff. The defendant engaged in slanderous accusations and a warrantless search of the plaintiff's purse and person. The defendant totally failed to act with diligence and caution, and his inquiry was limited to questions intended to intimidate the plaintiff.

The defendant could have attempted to show that, despite all of the facts as testified to by the plaintiff, he acted in good faith in instituting and carrying out the criminal prosecution, and that he believed, even if he was mistaken, that the plaintiff was guilty, *Hearn v. Batchelor*, 47 Ga. App. 213, 214 (170 SE 203) (1933); however, the defendant elected not to produce any evidence.

As Judge Banke stated in another case involving the same defendant, *K-Mart v. Adamson*, 192 Ga. App. 884, 886 (386 SE2d 680) (1989):

> One who has done nothing to give the impression that he or she is shoplifting should not be subject to any detention at all for that offense; and, conversely, one who has acted in such a way as to give the impression that he or she is shoplifting but who is in fact innocent of any such misconduct should not be subjected to continued detention beyond that which is reasonably necessary to ascertain the true facts, nor should such a person be subjected to gratuitous and unnecessary indignities during the course of such a detention.

Medical testimony and other testimony showed that as a result of the prosecution the plaintiff suffered from depression that has almost caused her marriage to fail and loss of her job.

Other testimony established that because of the defendant's acts, the plaintiff now has a criminal record and fingerprints on file with the local law enforcement agency, the GBI, and the FBI that were not expunged by her acquittal in the criminal case.

Evidence established she incurred legal fees for her defense in the criminal prosection and medical expenses as the result of her ordeal. The jury was authorized to find and award not only actual damages but additional damages for the aggravating circumstances

involved. *Melton v. LaCalamito*, 158 Ga. App., supra at 824.

This plaintiff proved her injuries, and the jury awarded her not only general damages, but it also awarded additional damages because of the aggravating circumstances. Those damages were intended to prevent K-Mart from repeating its wrongdoing.[5]

The majority, for some reason unknown to me, appears eager to find Mrs. Coker "criminally guilty" of shoplifting. The plaintiff's criminal liability has already been decided in a criminal court and everyone involved in this malicious prosecution action, except the majority, have announced their belief that the plaintiff is "innocent." The majority overlooked controlling authority that demands that the plaintiff recover from the defendant in this malicious prosecution action.

By denying Mrs. Coker her verdict, this Court sends a message to K-Mart that they can, with impunity, allow their guards to engage in selective prosecution of those people who they may find objectionable.[6]

I am authorized to state that Justice Benham joins in this dissent.

DECIDED DECEMBER 5, 1991 —
RECONSIDERATION DENIED DECEMBER 18, 1991.

*Chambers, Mabry, McClelland & Brooks, John C. Stivarius,* for appellant.

*D. William Garrett, Jr.,* for appellee.

---

[5] At a time when the jury was not present the trial judge speaking about the guard said: "This guy was a real jerk in the way that he handled the matter; and I don't know if he is still there or not but he wouldn't be if he had of been my employee because there is no reason to resort to the kind of humiliation and harassment after he saw what he saw that he resorted to. You can be professional like the Roswell police officers were in making their arrest. It is not their job out there to be the judge and the jury and the executioner. It is their job to make a determination to call into play the criminal justice system; and to do it and to get emotionally wrought-up in it and to act like a horse's behind is unforgivable. . . . There is not any doubt in my mind that you have suffered unbelievably as a result of the experience. . . . Nobody in the justice system is condoning the kinds of intimidation and harassment that this security guard used. A lot of reasons that people become security guards and can't be police officers is because of this kind of a problem that they have. There is no question about that. . . ."

[6] I am sure that Mrs. Coker appreciates the majority's concern as expressed in its footnote about the way K-Mart mistreated her, but not concerned enough to give her any relief — except to relieve her of the jury's verdict and award of damages.