[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 18-10848
Non-Argument Calendar

_____

D.C. Docket No. 1:17-cv-00741-ELR

TANNER DAMALI,

Plaintiff-Appellant,

versus

CITY OF EAST POINT, GEORGIA,
and ROBERT C. GRAY,

Defendant-Appellees.

_____

Appeal from the United States District Court
for the Northern District of Georgia

_____

(March 13, 2019)

Before WILLIAM PRYOR, JORDAN, and ANDERSON, Circuit Judges.

PER CURIAM:

Tanner Damali appeals the district court's dismissal of his complaint alleging claims under 42 U.S.C. § 1983 and Georgia law against Detective Robert Gray for malicious prosecution and a state-law claim against the City of East Point on the basis of municipal liability.  The district court held that probable cause existed for Mr. Damali's arrest, defeating all asserted claims.  After careful review of the record and the parties' briefs, we affirm.

## I

The facts, as alleged in Mr. Damali's complaint, are as follows.

On December 28, 2014, Mr. Damali was working as a culinary attendant at the Aloft Hotel in Atlanta, Georgia.  During his shift, an armed robbery occurred several miles away at a Family Dollar store in East Point, Georgia.  A store employee identified Shondra Sypho as the lookout, and she was arrested and taken into custody on January 8, 2015.  The next day, defendant Detective Robert C. Gray interviewed her about the robbery.  According to his report, Ms. Sypho detailed how the robbery was planned and executed.  She specifically named Demon Calhoun, Darius Bell, Dante Bell, and Tanner Damali as the four other participants.[1]

---

[1] Mr. Damali's complaint alleges that according to Detective Gray's report—which is not a part of the record—the interview with Ms. Sypho was recorded.  City of East Point contends that no recording exists.  We take as true Mr. Damali's allegations.

2

On January 15, 2015, based on Ms. Sypho's statement, Detective Gray obtained arrest warrants from the Fulton County Municipal Court for Mr. Damali and the three other suspects.  In his affidavit for Mr. Damali's arrest, and based solely on Ms. Sypho's statement, Detective Gray swore that Ms. Sypho had "maintained a criminal and personal relationship with [Mr.] Damali, et al. for several years," and that Mr. Damali participated in the planning and execution of the Family Dollar robbery, returning later to a "vacant apartment to divide any money and property" with Ms. Sypho, Mr. Calhoun, Mr. Darius Bell, and Mr. Dante Bell.

Mr. Damali alleges in his complaint that, before obtaining the arrest warrant for him, Detective Gray did not interview any of the other robbery suspects or make any attempt to ascertain whether Mr. Damali had an alibi for the time of the robbery.  Mr. Damali further alleges that Detective Gray was aware that Mr. Damali did not have any criminal history and made no attempt to learn from Dante Bell—who was arrested pursuant to a January 15 warrant and processed into jail on January 26—whether he knew Mr. Damali.

Mr. Damali was not arrested pursuant to the January 15 warrant.  Instead, on February 6, 2015, the Fulton County District Attorney's Office obtained a grand jury indictment against Mr. Damali and the four other suspects, charging them with armed robbery, aggravated assault, and false imprisonment.  Mr. Damali received a

letter directing him to appear in Fulton County Superior Court for a plea and arraignment calendar. He did not know the reason for the court notice or what the charges entailed, but went to court as instructed. There, he was charged with armed robbery, possession of a firearm in the commission of a felony, terroristic threats, aggravated assault, and false imprisonment.

Represented by counsel, Mr. Damali waived formal arraignment and pleaded not guilty in open court on March 23, 2015. He then turned himself in to the Fulton County Jail, where he was held for two days. Mr. Damali was released on a signature bond and was required to report to pre-trial services weekly.

Mr. Damali alleges in the complaint that he was working the night of the East Point Family Dollar robbery and had no involvement in the planning or commission of the crime. Mr. Damali does not know Ms. Sypho or any of the men charged with the robbery. On August 12, 2015, the State moved for *nolle prosequi*, dismissing all of the charges against Mr. Damali.

In January of 2017, Mr. Damali filed suit against Detective Gray and the City of East Point, alleging that it was unreasonable for Detective Gray to rely on Ms. Sypho's identification of him in obtaining the arrest warrant. He further alleged that he experienced pain and suffering, extreme emotional distress, anxiety, humiliation, and outrage as a direct and proximate cause of his arrest, detention, and prosecution.

4

## II

We review *de novo* a district court's ruling on a Rule 12(b)(6) motion to dismiss for failure to state a claim. *See Ironworkers Local Union 68 v. AstraZeneca Pharm., LP*, 634 F.3d 1352, 1359 (11th Cir. 2011). In considering a Rule 12(b)(6) motion, we accept all factual allegations as true and make all inferences in the light most favorable to the non-moving party. *See Duke v. Cleland*, 5 F.3d 1399, 1402 (11th Cir. 1993).

## III

To establish a claim of malicious prosecution under § 1983, a plaintiff must prove a violation of his Fourth Amendment right to be free from an unreasonable seizure in addition to establishing the elements of the common-law tort of malicious prosecution. *See Wood v. Kesler*, 323 F.3d 872, 881 (11th Cir. 2003). These elements include (1) a criminal prosecution instituted or continued by the present defendant, (2) with malice and without probable cause, (3) that terminated in the plaintiff's favor, and (4) that caused damage to the plaintiff accused. *See Uboh v. Reno*, 141 F.3d 1000, 1004. Because the existence of valid probable cause defeats a claim of malicious prosecution, we focus on whether probable cause supported Detective Gray's affidavit for a warrant to arrest Mr. Damali. *See Marx v. Grumbinner*, 905 F.2d 1503, 1506 (11th Cir. 1990); *Dahl v. Holley*, 213 F.3d 1228, 1236 (11th Cir. 2002).

We begin by acknowledging that Mr. Damali endured a disruptive and traumatic series of events that may well have been avoided with additional investigative work by Detective Gray or others.  Nevertheless, our longstanding circuit precedent is clear that uncorroborated testimony from an admitted accomplice is sufficient to support probable cause, "unless it is incredible or contradicts known facts to such an extent no reasonable officer would believe it." *Craig v. Singletary*, 127 F.3d 1030, 1044, 1045–46 (11th Cir. 1997) (en banc).  Under this binding precedent, the identification of Mr. Damali by Ms. Sypho— who was a known participant in the Family Dollar Store robbery—was sufficient to establish probable cause and support Detective Gray's affidavit for Mr. Damali's arrest.[2]

Mr. Damali has made no effort to distinguish *Craig*.  Nor has he provided any credible argument to create some exception to its rule.  Indeed, Mr. Damali does not even mention or cite *Craig* in his opening brief.  The most tenable argument related to *Craig* is Mr. Damali's suggestion that it was unreasonable for Detective Gray to rely on Ms. Sypho's identification because one of her statements—that she and Mr. Damali had "maintained a criminal and personal

---

[2] Mr. Damali also challenges the district court's ruling on his state-law claim for municipal liability against the City of East Point.  As with a § 1983 claim for malicious prosecution, a Georgia state-law claim for malicious prosecution is defeated where the arrest is supported by probable cause.  *See K-Mart Corp. v. Coker*, 410 S.E.2d 425, 426 (Ga. 1991) ("The lack of probable cause is the gravamen of a malicious prosecution action.").  Because Mr. Damali does not have a plausible claim for malicious prosecution against Detective Gray, there is nothing for which the City could be held vicariously liable.

relationship . . . for several years,"—contradicted known facts. Specifically, Mr. Damali claims in his brief (but did not allege in his complaint) that "the suspect identified by Sypho was known to have a criminal history, [while] Detective Gray knew that this particular Damali had no such history."

This argument makes too much of the allegations in the complaint. Ms. Sypho's statement to Detective Gray that she had a long criminal relationship with Mr. Damali does not necessarily mean that the suspect she identified would have actually possessed a criminal record. That hypothetical "Tanner Damali" may simply have been skillful or fortunate enough in his criminal ventures with Ms. Sypho to evade capture. And while the absence of a criminal record under these circumstances might have raised questions about a named suspect's actual identity, it hardly contradicted Ms. Sypho's statements to "such an extent no reasonable officer would believe" her identification. *See Craig*, 127 F.3d at 1045–46.

Mr. Damali also points to a number of actions that he says Detective Gray should have taken to ensure that the warrant named the correct Tanner Damali. This includes an investigation into any aliases for the name "Tanner Damali," a review of social media accounts, an attempt to confirm Tanner Damali's phone number, address, and employer, or questioning of the co-defendants to see if they would corroborate Ms. Sypho's identification. We agree that some of these inquiries would have been advisable. But "a police officer is not required to

7

explore and eliminate every theoretically possible claim of innocence before making an arrest." *Kingsland v. City of Miami*, 382 F.3d 1220, 1229 (11th Cir. 2004). And while "an officer may not choose to ignore information that has been offered to him or her," or "conduct an investigation in a biased fashion," *id.*, there are no allegations in the complaint or facts in the record to suggest either occurred here. It was permissible for Detective Gray to exclusively rely on the uncorroborated testimony of an admitted accomplice to establish probable cause for Mr. Damali's arrest. *See Craig*, 127 F.3d at 1045–46.

## IV

For the forgoing reasons, we affirm the district court's order dismissing Mr. Damali's claims.

**AFFIRMED.**