28400.   GOLDSTEIN *v.* JOHNSON.

DECIDED NOVEMBER 27, 1940.   REHEARING DENIED DECEMBER 12, 1940.

*R. D. Tisinger, Willis Smith,* for plaintiff in error.
*Boykin & Boykin,* contra.

BROYLES, C. J.   Mrs. Lottie Johnson (herein referred to as plaintiff) sued Mrs. Sarah Goldstein (herein referred to as defendant) to recover damages resulting from a collision between the Buick coupé automobile in which she was riding and which was being driven by J. A. Gladney, and a Chrysler automobile driven by Harry Goldstein, the defendant's husband. The jury rendered a verdict in favor of the plaintiff for $4006, with interest, and the court overruled the defendant's motion for new trial containing the usual general grounds and twenty-eight special grounds; and to this judgment the defendant excepted.

For the purposes of this decision the following is deemed a sufficient statement of the material facts alleged in the petition:   The collision occurred at about nine o'clock on the morning of May 2, 1939.   Gladney parked his car in front of Boatright's filling-station, parallel with the Bankhead Highway near the town of Winston, Douglas County, Georgia.   The car was facing in an easterly direction.   In passing the filling-station Bankhead Highway runs

nearly east and west. Some thirty yards east of said filling-station the Winston dirt public road, running approximately north and south, crosses the Bankhead Highway. The day was clear, and after looking in both directions and seeing no automobile approaching from either the east or the west Gladney drove his automobile from the place where it was parked near the filling-station into the Bankhead Highway, and, just after entering the Winston road, Harry Goldstein, traveling east on the Bankhead Highway at the high and reckless speed of fifty-five miles an hour, turned his automobile to the left side of the Bankhead Highway and ran it into the car in which plaintiff was riding after it "had crossed as well as cleared the Bankhead Highway" and was some fifteen feet on the dirt highway, knocking the Gladney car into a ditch and seriously injuring plaintiff in designated particulars.

The petition sets out as the proximate cause of the collision numerous acts of negligence, a few of the most important being as follows: (a) In operating said automobile at a high and reckless rate of speed at the intersection of the highways. (b) In failing to have said car under control at the intersection. (e) In operating the automobile at fifty-five miles an hour in said highway. (i) In failing to keep a proper lookout. (k) In failing to maintain control of said automobile. (n) In failing to have safe and effective brakes on the car. (p) In negligently operating said automobile at a place on the highway that was "burdened with heavy traffic." (u) In failing to reduce the speed of the automobile "on or around a curve as required by statute." (v) In failing to give any warning of his approach. (w) In failing to reduce the speed of the car "at and on intersecting highways and curves, and at crossroads." (x) "In failing to keep the car under his immediate control where danger is apparent." (y) "In failing to . . operate said car on the right-hand side of the road . . , as required by law." Paragraph 7 of the petition follows: "Petitioner further alleges that Mrs. Sarah Goldstein is part owner of the mercantile establishment, known as 'The Hub,' in the City of Carrollton, which is controlled, managed and operated by her husband, Harry Goldstein, for and in her behalf; that he was on business for her, in the automobile owned by her, at the time of the collision, [and] was operating said automobile by and with the knowledge and consent of his wife. That said automo-

bile was kept by . . Mrs. Sarah Goldstein for her use and benefit and for the use and benefit of her husband [and] family; that said Harry Goldstein was operating said car on said date by and with the full consent and knowledge of his wife, . . and he operated said car on said highway at such a rate of speed, as well as dangerous manner, as was obviously dangerous to petitioner and others traveling on said public highway."

In her answer the defendant denied negligence, and substantially pleaded that her husband saw Gladney's car parked at the filling-station parallel with the Bankhead Highway, facing east in the direction Goldstein was driving, and that without any warning Gladney turned his car directly into said highway in front of the Goldstein automobile, and that Goldstein immediately sounded his gong, applied his brakes (which were in good order), and turned his car to the left in order to avoid any accident, and that the cars collided almost in the center of the paved highway. Paragraph 7 of the answer follows: "In answer to paragraph 7 of plaintiff's petition, the defendant admits that she is part owner of 'The Hub Incorporated,' being a mercantile establishment in Carrollton, Georgia, and that her husband manages the same. The remainder of said paragraph is denied."

A careful examination of the long brief of evidence satisfies us that the evidence, though conflicting in many respects, warranted the jury in concluding that the defendant's husband, Harry Goldstein, was negligent in material particulars alleged in the petition. and that such negligence was the proximate cause of the collision. However, one of the controlling and most hotly contested questions is whether the defendant can be held legally liable for her husband's negligence. It is unquestionably true that a wife may be held liable for the torts of her husband under the family-purpose doctrine. *Golden* v. *Medford,* 189 *Ga.* 614 (7 S. E. 2d, 236). The evidence bearing upon this question follows: "My name is Mrs. Harry Goldstein. Mr. Harry Goldstein is my husband. I own . . a Chrysler automobile that he was driving the day he ran into Mr. Gladney and Mrs. Johnson on May 2, 1939. . . I didn't buy the tag. He bought the tag for me. He was acting as my agent. He was operating this automobile. He is a merchant. He operates 'The Hub.' That's that big store on the south side of the square. He is manager of it. Fannie Goldstein, Harry Goldstein,

and myself own the store. He owns one third and I own one third. . . He bought this automobile for me. He made the trade. He is my general agent. . . He looks after all the mercantile business. I live in Atlanta now. I stay in Atlanta. At this time I was in Chattanooga. I am still up there with my son going to school. The automobile was kept down here by Mr. Goldstein when he wanted it. . . He used it by and with my consent. It was a family car. He used it whenever he pleased. He had full authority and it was common consent for him to use the family car. I was not in the automobile at the time of the accident. Mr. Goldstein used this automobile any time he wanted to about his business or for pleasure, by and with my knowledge and consent. He had full access to it whenever he wanted it. He kept it and used it when he needed it, and I kept it when I wanted it. . . Mr. Goldstein bought the car and gave it to me. Either of us that wanted it used it without the permission of the other."

Harry Goldstein testified on cross-examination: "I operate the Hub mercantile establishment here for my wife, both of us, and for my brother's wife. I am manager down there. I use this car that I have in my wife's name any time I get ready, unless she wants it. I use it if she does not want it. I use it for business or pleasure. It is used sometimes as a business automobile quite frequently. Not every trip I made for the Hub was in that automobile owned by my wife. My sister has two of them. That's the only car my family has. That's the only car I generally used in connection with my business. On this particular occasion I had merchandise in the rear end of the car. I was carrying merchandise to the Sims five-and-ten-cent store. I was delivering it for the Hub. That was on the business of the Hub mercantile company." On direct examination Harry Goldstein testified: "On May 2d this year I had an accident on the Winston road. I had started to Atlanta to see my doctor that day. Mrs. Goldstein at that time was in Chattanooga. She didn't have anything to do with that trip, or know anything about it." In so far as Mr. Goldstein is concerned the automobile in question appears to have been a dual-purpose car. The defendant testified that her husband "used this automobile any time he wanted to about his business or for pleasure by and with my knowledge and consent;" and at the time of the collision he was using it as a means of getting

to Atlanta to see a doctor, and was also using it in delivering merchandise for the store that was owned by him, his wife, and Fannie Goldstein, and managed by him. Applying the facts to the law, we are satisfied that the defendant was responsible for any acts of negligence that her husband may have committed on the occasion in question. See the leading case of *Griffin* v. *Russell,* 144 *Ga.* 275 (87 S. E. 10, L. R. A. 1916F, 216, Ann. Cas. 1917D, 994); *Hubert* v. *Harpe,* 181 *Ga.* 168 (182 S. E. 167); *Ficklen* v. *Heichelheim,* 49 *Ga. App.* 777 (176 S. E. 540); *Golden* v. *Medford,* supra; Code, § 105-108. We therefore hold that the evidence supported the verdict.

Since so many of the special grounds of the motion for new trial assign error on the allowance in evidence of testimony tending to show that the defendant was protected by indemnity insurance, and upon the refusal of the court to grant a mistrial because of such evidence, it may save time to make a few preliminary remarks and state applicable and well-established rules of law. In the first place, we are of the opinion that certain statements made by Harry Goldstein, *immediately* after the collision between the automobile he was driving and the automobile driven by J. A. Gladney, to the plaintiff and to Gladney, to the effect that Goldstein was sorry that the collision happened and that "I carry heavy insurance and you will be taken care of," were admissible as a part of the res gestæ. And we do not think the evidence was inadmissible on the theory that the defendant was not bound by such statements of her husband. In substantiation of this last conclusion see the testimony of the plaintiff and that of Harry Goldstein that has been already quoted. "According to the generally accepted rule, the fact that defendant is insured or otherwise indemnified against loss in the event of a recovery against him can not be shown *as an independent fact by plaintiff* [citing *Bibb Mfg. Co.* v. *Williams,* 36 *Ga. App.* 605, 137 S. E. 636; *Heinz* v. *Backus,* 34 *Ga. App.* 203, 128 S. E. 915; *Sims* v. *Martin,* 33 *Ga. App.* 486, 126 S. E. 872], *although it may be shown . . where it is brought out as an incident to the proof of some other fact properly involved."* (Italics ours). 64 C. J. 104, § 111. Among numerous authorities cited to support the last clause of the above rule is the *Sims* case, supra. The first two headnotes of that case follow: "1. Where, immediately after a collision by an automobile, the owner, who was driv-

ing it, exclaimed, 'It is my fault, all my fault; I was going too fast; we have got insurance and will be glad to make settlement we think is right,' the entire expression, including the reference to having insurance, if made as a part of the res gestæ of the transaction, as a spontaneous and uncalculated expression, possesses probative value as tending to establish, by way of admission at the time of the collision, a negligent operation of the automobile as to speed. The realization by the owner of an automobile that he has insurance against liability for damage caused by its operation might cause him to feel secure against responsibility for such damage, and cause him to operate the automobile negligently and regardless of consequences. 2. In this case the declaration was made immediately after the collision and while the person who had been knocked down in the street and injured as a result of the collision was still lying there, and before the owner, who was driving, had got out of the automobile. The expression therefore was admissible as part of the res gestæ; and although the part of it with reference to insurance was expressly withdrawn by the court from the jury, it nevertheless in fact got to the jury, and, the jury being entitled to consider the complete declaration as tending to establish negligence on the part of the defendant, there could have been no error in refusing to declare a mistrial upon the ground that the jury had been prejudiced by the admission of such testimony. This does not contravene the rule laid down by some courts, that in a suit to recover for personal injuries caused by the collision of an automobile any suggestion made in the presence of the jury at the instance of the plaintiff that the defendant is protected against responding in damages by liability insurance is highly prejudicial to the defendant and will require that a mistrial be declared. The latter rule is properly applied in cases in which such evidence has no probative value as respects any legitimate issue in the case, and possibly where its probative value is so small when compared to its prejudicial effect that fairness and justice demand its exclusion. It is hardly properly applied where the defendant himself, as in the case under consideration, injects it into the case and makes it a part of the res gestæ, and invests it with probative value beneficial to the plaintiff."

Under the authorities cited and the facts of this case, it can not be seriously doubted that special grounds 1 and 8 show no cause

for reversing the judgment. Each of these grounds avers that the court erred in admitting in evidence statements of Harry Goldstein, the driver of the defendant's automobile, made immediately after the collision. Ground 1 shows the following: "Q. Did Harry Goldstein come up to your car immediately after the accident and say anything to you? A. Yes. He said, 'Miss Lottie, I am so sorry this happened. Don't worry about a thing in the world. I carry heavy insurance, and you will be taken care of.'" It appears from special ground 8 that Harry Goldstein made substantially the same statement as the one made to the plaintiff to Mr. J. A. Gladney, the driver of the car in which the plaintiff was riding. In each instance the evidence was admissible as a part of the res gestæ, and was competent to shed light on the alleged negligence of Harry Goldstein in operating the defendant's automobile.

Having reached the conclusion that evidence to the effect that the defendant was protected by liability insurance against loss resulting from the collision was admissible as tending to show that Harry Goldstein was negligent, and that the admission of such evidence was not cause for a mistrial, we deem it unnecessary to consider seriatim the numerous special grounds assigning error on the admission of such evidence and on the refusal of the court to declare a mistrial because of it; and hold that none of these grounds shows cause for a reversal of the judgment. Before concluding this phase of the case, however, it may be well to refer briefly to special ground 12 which assigns error on the refusal of the court to declare a mistrial because counsel for defendant in error, in his concluding address to the jury "argued that Mr. Goldstein told Mr. Gladney, when they met after they got out of the cars, that he had plenty of insurance to take care of it." When a motion for mistrial was made on the ground that Goldstein's statement to Gladney was not binding on the defendant and that the argument was prejudicial, counsel for defendant in error said: "We wanted to show that he admitted his negligence;" and the motion was overruled. Having already held that Goldstein's statement to Gladney was admissible as indicating that Goldstein was negligent, there appears no reason why counsel could not argue that statement to the jury for the purpose of showing that Goldstein virtually "admitted his negligence." We are strengthened in the

foregoing conclusions by the fact that it appears from ground 11 that the court instructed the jury that the question of insurance was no concern of theirs, and that if they should award damages in the case, the amount of such damages "would not be affected in any way by the fact of there being insurance or no insurance;" and by the further fact that at the end of his charge the court instructed the jury to the same effect. Several of the remaining grounds of the amendment to the motion for new trial allege that the court erred in either admitting or rejecting certain evidence. A careful examination of these grounds satisfies us that there is no substantial merit in any of them. We are likewise satisfied that when those grounds averring error on specified excerpts from the charge of the court are considered in the light of the entire charge, none of them shows cause for a reversal of the judgment.

In conclusion we hold that the evidence supported the verdict, and that none of the special grounds of the motion for new trial discloses reversible error.

*Judgment affirmed. MacIntyre and Gardner, JJ., concur.*