A91A1552. LIFE CARE AMBULANCE, INC. v. HOSPITAL AUTHORITY OF GWINNETT COUNTY.
(415 SE2d 502)

ANDREWS, Judge.

Life Care Ambulance, Inc. (Life Care) sued the Hospital Authority of Gwinnett County (Gwinnett Hospital) seeking damages under three causes of action. First, Life Care alleged that Gwinnett Hospital breached a contract for convalescent ambulance services. Second, in a claim based on quantum meruit in the absence of an express contract, Life Care sought to collect the value of convalescent ambulance services rendered to Gwinnett Hospital. Additionally, Life Care claimed

that Gwinnett Hospital tortiously interfered with the sale of the ambulance business to third parties. The trial court granted summary judgment in favor of Gwinnett Hospital as to all three causes of action, and Life Care appeals claiming various factual issues preclude summary judgment. Although the trial court's order grants summary judgment with respect to the three counts of the complaint in which the three causes of action were set forth, all three causes of action were subsequently embodied in the pretrial order (which recited the pending motion for summary judgment) entered prior to the grant of summary judgment. Since the pretrial order supersedes the pleadings and controls the subsequent scope and course of the action, the effect of the order granting summary judgment was to eliminate these claims from the existing pretrial order. *Jacobsen v. Muller*, 181 Ga. App. 382, 384 (352 SE2d 604) (1986).

Gwinnett Hospital and Life Care entered into a written contract for ambulance service which provided that Life Care "desires to provide and furnish convalescent transport" for the hospital "for a term of one (1) year beginning on the 1st day of July, 1986, and ending on the 30th day of June, 1987," unless renewed as provided in the contract. The contract stated that Life Care "shall provide and furnish the primary convalescent services for all patients of [Gwinnett Hospital]. If for any reason [Life Care] is unable to respond to any call within the time specified herein, [Life Care] shall dispatch the call to a secondary transport service designated by [Gwinnett Hospital] . . . [Life Care] will respond to calls for convalescent transport in a timely manner and as rapidly as possible and in all cases shall respond within thirty (30) minutes for non-emergency calls and fifteen (15) minutes for urgent calls." Under the contract, Life Care invoiced Gwinnett Hospital for ambulance services rendered, and the hospital paid Life Care 60 percent of the invoiced amount. Gwinnett Hospital was responsible for billing and collecting from the patient, and bore the loss if the patient failed to pay the bill. As to renewal, the contract provided that Gwinnett Hospital "shall have the option to renew the Agreement for four (4) successive periods of one (1) year each by giving [Life Care] notice in writing of its intention to exercise such option not less than sixty (60) days prior to the expiration of the then current term." The contract also provided that if the current owners of Life Care sold the business Gwinnett Hospital had the option to void the contract.

It is undisputed that Gwinnett Hospital did not give the written notice required by the contract for renewal. Nevertheless, the clear deposition testimony of both parties shows that they intended to renew the contract after the initial one year period expired, and that they both considered themselves bound by the terms of the written contract and continued to perform in accordance with the terms of

that contract from its inception on July 1, 1986 through December 3, 1990, when Gwinnett Hospital ceased to do business with Life Care after the original owners sold the business. Whether this evidence establishes an oral agreement to renew the written contract, or an oral contract incorporating the terms of the previous written agreement, in either case the facts establish, as a matter of law, that the parties agreed to be bound by the express provisions of the contract during their business relationship.[1]

The construction of a contract, unambiguous on its face, is a matter of law for the court. OCGA § 13-2-1. Even in cases where some ambiguity exists, no jury question is presented unless the ambiguity remains after the court has applied the rules of contract construction. *Hirschfield v. Continental Cas. Co.*, 199 Ga. App. 654, 655 (405 SE2d 737) (1991). The trial court concluded that under the contract Life Care was not the exclusive provider of convalescent ambulance service, therefore Gwinnett Hospital did not breach the agreement if it referred some of its convalescent transports to a secondary ambulance service. The contract provided that Life Care would provide the primary convalescent ambulance service for all of Gwinnett Hospital's patients. If for any reason Life Care was unable to timely respond to a convalescent transport, then Life Care was responsible to dispatch the call to a secondary ambulance service. This arrangement clearly contemplated that all calls for convalescent ambulance service were to be routed to Life Care as the primary transporter, and a secondary transporter would be utilized only if Life Care was unable to timely respond. Although the contract refers to a 30 minute response time for non-emergency calls and a 15 minute response time for urgent calls, we find no ambiguity with respect to the description of convalescent ambulance service covered by the contract. Both the context in which the term "urgent" was used in the contract, and extrinsic proof of its meaning within the business showed that the term "urgent call" did not refer to emergency or a non-convalescent ambulance service, but rather to a type of convalescent transport requiring a shorter response time. OCGA § 13-2-2 (2), (4). Factual questions exist as to whether and to what extent Gwinnett Hospital referred convalescent transports directly to other ambulance services in violation of the agreement with Life Care. The trial court erred to the extent it granted summary judgment to Gwinnett Hospital on Life

---

[1] Though any oral contract between the parties was not performed within a period of one year or less, the Statute of Frauds is not a bar to enforcement. Aside from the issue of whether performance under such an oral agreement makes it enforceable, the Statute of Frauds was not raised as an affirmative defense in the pleadings, by motion, or in the pretrial order. OCGA §§ 13-5-30; 13-5-31; *Brantley Co. v. Simmons*, 196 Ga. App. 233, 234 (395 SE2d 656) (1990).

Care's claim for breach of the express contract for convalescent ambulance services.

Life Care alleged that if no contract existed, it was entitled to 85 percent of the invoiced amount of convalescent ambulance service, which was the customary percentage it and other ambulance services had received prior to the 60 percent agreement under which Life Care was made the primary transporter for all convalescent patients. By its cause of action in quantum meruit, Life Care sought to recover the additional value of convalescent ambulance service represented by the difference between 85 percent of the invoices and the amount it was paid by Gwinnett Hospital at the 60 percent rate. "There cannot be an express and implied contract for the same thing existing at the same time between the same parties. It is only when the parties themselves do not expressly agree, that the law imposes and raises a promise." (Punctuaion and citations omitted.) *Gilbert v. Edmondson*, 193 Ga. App. 593, 594 (388 SE2d 713) (1989). Since an express contract existed between Life Care and Gwinnett Hospital governing convalescent ambulance services, and providing that Life Care be paid 60 percent of the amount invoiced to the hospital, the trial court correctly granted summary judgment to the hospital on Life Care's quantum meruit claim for the additional value of such services. Id.

The trial court also properly granted summary judgment in favor of Gwinnett Hospital on Life Care's claim that the hospital tortiously interfered with the sale of Life Care to third parties. The record shows that two potential purchasers of Life Care asked Gwinnett Hospital about the status of Life Care's contract for convalescent ambulance service with the hospital. The hospital informed Dr. James Jackson that the agreement was valid. In discussions with the hospital and by reading the agreement, Dr. Jackson learned that the agreement provided it could be terminated unless renewed on a yearly basis, and that the hospital had the option to void the agreement upon the sale of the business. Mr. Karr, the hospital's chief operating officer, informed Dr. Jackson, who also worked in the hospital's emergency room, that the matter would have to be discussed with other authorities at the hospital. In his deposition, Dr. Jackson indicated he elected not to pursue the purchase because of other business opportunities and because based on the provisions in the agreement, there were no assurances that the contract would continue.

In January 1990, Life Care, through its attorney, threatened to sue the hospital over convalescent ambulance services and a claim that the hospital interfered with the sale of the business to Dr. Jackson. Karr's testimony reflects that in February 1990 he informed another potential purchaser, James Justice, that the hospital would not automatically exercise its option to void the contract if he purchased Life Care. The record reflects that the hospital agreed, at the request

of Justice, to an advance extension of the contract through June 30, 1990, on condition that Life Care would agree to release its claims against the hospital. Karr informed Justice that after the sale, in the absence of such a release, the hospital would take bids from Life Care and any competitors, and a new contract would be established with the transporter making the best bid.

" 'In establishing a cause of action for malicious (or tortious) interference with business relations, a plaintiff . . . must demonstrate that the defendant . . . (1) acted improperly and without privilege, (2) purposely and with malice with the intent to injure, (3) induced a third party or parties not to enter into or continue a business relationship with the plainciff, and (4) for which the plaintiff suffered some financial injury.' *Hayes v. Irwin*, 541 F.Supp. 397, 429 (N. D. Ga. 1982); see *NAACP v. Overstreet*, 221 Ga. 16, 21 (142 SE2d 816) (1965), cert. dismissed, 384 U. S. 118, rehg. den., 384 U. S. 981 (1966)." *Integrated &c. Systems v. NEC Home Electronics (USA),* 174 Ga. App. 197, 200-201 (329 SE2d 554) (1985). "[T]he principle is generally recognized that a person's business is property in the pursuit of which he is entitled to protection from tortious interferences by a third person who, in interfering therewith, is not acting in the exercise of some right, such as the right to compete for business. . . ." *NAACP v. Overstreet*, 221 Ga. 16, 21 (142 SE2d 816) (1965).

The evidence shows that Gwinnett Hospital acted within its rights under the ambulance service agreement with Life Care. The agreement stated that the willingness of the hospital to enter into the contract was "largely based upon the abilities and competence of its sole stockholders and operating officers . . ." and that "[a]ny transfer, sale or conveyance of a substantial interest in the business or the introduction or participation of different stockholders or operators shall, at the option of [Gwinnett Hospital], render this Agreement null, void and of no further force and effect." Given that the hospital reserved the absolute right to void the contract upon the sale of the business, its dealings with the potential purchasers reflect no malicious intent, but rather the legitimate exercise of that right in the best interest of the hospital's operation. *Singleton v. Itson*, 192 Ga. App. 78, 80 (383 SE2d 598) (1989); *Johnson v. Auto/Mend*, 183 Ga. App. 311, 312 (359 SE2d 10) (1987).

*Judgment affirmed in part; reversed in part. Sognier, C. J., and McMurray, P. J., concur.*

DECIDED FEBRUARY 7, 1992 —
RECONSIDERATION DENIED FEBRUARY 18, 1992 —

*J. Curtis Hanks*, for appellant.
*Rowe & McGarity, John M. McGarity*, for appellee.