## A92A0154. JONES v. PARRISH.
(417 SE2d 210)

McMURRAY, Presiding Judge.

Plaintiff Barry Lee Jones brought suit against Charlie Parrish, d/b/a Charlie's One Stop, seeking damages for malicious prosecution. The case proceeded to trial and, at the close of plaintiff's evidence, defendant moved for a directed verdict. The trial court granted defendant's motion for a directed verdict and dismissed the case. Plaintiff appeals.

Viewing the evidence in the light most favorable to plaintiff, the party opposing the motion for a directed verdict, see *Burney v. Butler*, 243 Ga. 620 (1) (255 SE2d 686), we find the following: Searching for some sour cream and onion potato chips, plaintiff drove his father's pickup truck to defendant's convenience store. A man, subsequently identified as Randy Crowder, entered the store ahead of plaintiff. Plaintiff had never seen Crowder previously.

As plaintiff approached the front door, Crowder turned around and moved toward plaintiff, who put his hands in the air. Crowder grabbed plaintiff's coat and pulled it over his head. Then Crowder threw plaintiff to the ground and started hitting him.

Plaintiff rolled to his father's pickup truck and managed to pull himself up. He reached into the bed of the truck, picked up a baseball bat (his father had been a Little League baseball coach) and told Crowder to leave him alone. Crowder left, heading back toward the convenience store.

Scared and unsure of what happened to Crowder, plaintiff took the baseball bat into the store and asked someone to call the police. He was told that the police had been called already. Just as plaintiff turned around, he found himself standing "nose to nose" with Crowder who wrapped him in a "bear hug" and dragged him down the center aisle of the store. As plaintiff struggled to get free, Crowder bit off plaintiff's left ear — plaintiff fell to the floor and dropped the bat.

Crowder grabbed the bat. He swung at plaintiff and hit him on the nose, shattering it into "210 pieces." He swung again and hit plaintiff on the right eye. Plaintiff managed to block a third swing with his hand. Then he reached up, grabbed Crowder's testicles and squeezed with all his might. Crowder retreated and plaintiff crawled toward a storage room to get away.

The police arrived and found plaintiff bleeding profusely in the storage room. Crowder was leaning against a counter, "halfway sitting and standing." His eyes were as big as "golf balls" and he appeared to be "strung out" on drugs. Holding the bat, he screamed at the officers in what seemed like a foreign language.

One of the officers yelled at Crowder to throw down the bat. Crowder threw the bat down and the officer kicked it away. Then Crowder charged the officer and shoved him against a stack of food. Grappling with each other, the two men fell against and broke a "soda" dispensing machine. They also knocked over a beer display, spilling beer "everywhere." Finally, the officer managed to put a "full Nelson" on Crowder and, with the help of additional officers who had arrived at the store, Crowder was subdued and arrested.

Plaintiff was put in an ambulance and taken to the hospital. He received "114 stitches" in his ear; he underwent surgery to put his nose back together.

In the meantime, defendant arrived at his store and began cleaning it up. He had "no idea" who damaged his store so he asked his clerk what had happened. He was told that there had been a fight between Crowder and plaintiff and that plaintiff entered the store with a baseball bat. He made no further inquiries. He did not ask the police who was to blame for the damage. He did not seek a police report of the incident (although a report was available to the public the very next day). Nevertheless, five days later, defendant sought an arrest warrant for plaintiff, deposing that plaintiff "intentionally" damaged defendant's property in an amount exceeding $500.

Actually, defendant's property was not damaged at all until the police arrived. No damage was inflicted on defendant's property during plaintiff's fight with Crowder. It was not until the police fought with Crowder that defendant's property was damaged.

Plaintiff was arrested and charged with criminal damage to property, felony grade. He retained and paid a lawyer to represent him. Ultimately, the case was dismissed for want of prosecution and plaintiff brought this malicious prosecution case against defendant. *Held*:

1. Plaintiff contends the trial court erred in granting defendant's motion for a directed verdict. We agree.

" ' "In actions for malicious prosecution, the question is, not whether the plaintiff . . . was guilty, but whether the defendant . . . had *reasonable cause to so believe* — whether the circumstances were such as to create in the mind of the defendant a *reasonable belief* that there was probable cause for the prosecution. (Cit.) Probable cause is defined to be the existence of such facts and circumstances as would excite the *belief* in a reasonable mind, that the person charged was guilty of the crime for which he was prosecuted." ' *Tanner-Brice Co. v. Barrs*, 55 Ga. App. 453 (2) (190 SE 676) (1937). 'While (probable cause) need not approach absolute certainty as to the facts, and it is not inconsistent with a considerable element of doubt, it must be more than mere conjecture or unfounded suspicion. Beyond this, the belief must be supported by appearances known to the defendant at the time, and a prosecution instituted without probable cause cannot be justified by anything, short of guilt in fact, which comes to the knowledge of the defendant later. . . . *The appearances must be such as to lead a reasonable man to set the criminal proceeding in motion. The defendant is not necessarily required to verify his information, where it appears to be reliable; but where a reasonable man would investigate further before beginning the prosecution, he may be liable for failure to do so. All such factors as the reliability of the source, the availability of further information and the difficulty of obtaining it, the reputation of the accused, and his opportunity to offer an explanation, and the apparent necessity of prompt action, are to be considered in determining whether it was reasonable to act without verification.'* Prosser, [Law of Torts § 119 (4th ed. 1971)] at 842." (Emphasis supplied.) *Melton v. LaCalamito*, 158 Ga. App. 820, 823, 824 (282 SE2d 393).

Were the facts known to defendant sufficient to lead a reasonable man to believe that plaintiff criminally damaged defendant's property? We think not. Defendant simply knew that plaintiff entered his store with a baseball bat and that a fight ensued between plaintiff and Crowder. After gleaning those sparse facts, defendant waited five days before he initiated the prosecution against plaintiff. During that period of time, defendant made no attempt to ascertain the full facts

about plaintiff's confrontation with Crowder. He did not ask detailed questions about the confrontation: He did not ask the police what happened; he did not obtain a copy of the police report. Instead, satisfied with the "broad strokes" painted by his clerk, defendant had plaintiff arrested and prosecuted. Given these facts, a jury question exists as to whether defendant should have investigated further before he criminally prosecuted plaintiff. *Melton v. LaCalamito*, 158 Ga. App. 820, 823, 824, supra. See also *Colonial Stores v. Fishel*, 160 Ga. App. 739, 740, 741 (288 SE2d 21) (reasonable man may be liable for his failure to conduct investigation before initiating criminal prosecution). The trial court erred in ruling otherwise.

We cannot accept defendant's contention that plaintiff failed to present evidence of malice. "Although a jury cannot infer a lack of probable cause from malice (*American Plan Corp. v. Beckham*, 125 Ga. App. 416 (4) (188 SE2d 151)), a jury is authorized to infer malice from a lack of probable cause. [Cits.]

"As we held [above] that the evidence authorized the jury to conclude that probable cause was lacking, it was within the province of the jury to infer malice from the lack of probable cause. [Cit.]" *Kviten v. Nash*, 150 Ga. App. 589, 591, 592 (258 SE2d 271). See also *Medoc Corp. v. Keel*, 166 Ga. App. 615 (305 SE2d 134); *Great Atlantic &c. Tea Co. v. Burgess*, 157 Ga. App. 632 (278 SE2d 174).

2. When he learned that defendant obtained a warrant for his arrest, plaintiff telephoned defendant and asked him to drop the charge which had been brought against him. According to plaintiff, defendant replied that he had to prosecute plaintiff in order to collect insurance proceeds and that he could not, therefore, drop the charge. Ruling upon a motion in limine filed by defendant, the trial court declared this evidence inadmissible because it injected "insurance" into the case. Plaintiff assigns error upon that ruling, urging us to find the evidence admissible because it tended to prove "malice" on the part of defendant.

"The fact that a defendant has liability insurance or is otherwise indemnified against loss cannot be shown as an independent fact, although it may be shown where it is incident to the proof of some other fact properly involved in the lawsuit. *Ideal Pool Corp. v. Champion*, 157 Ga. App. 380, 383, (277 SE2d 753) (1981); *Goldstein v. Johnson*, 64 Ga. App. 31, 35 (12 SE2d 92) (1940). ' "A party to a lawsuit has a right to bring forth all relevant material and competent facts. Although such . . . facts include the suggestion that one party carries insurance, the rule is not changed. Error arises only when a party intentionally brings before the jury on an immaterial or irrelevant matter the fact that the opposite party carries insurance." ' *Wade v. Drinkard*, 76 Ga. App. 159, 165 (45 SE2d 231) (1947)." *U-Haul Co. of Western Ga. v. Ford*, 171 Ga. App. 744 (1) (320 SE2d

868).

In our view, plaintiff should have been permitted to testify that defendant was prosecuting plaintiff to collect insurance proceeds covering the damage to defendant's property. The evidence was relevant to the issue of malice; it was not outweighed by possible prejudice to defendant. See *Petway v. McLeod*, 47 Ga. App. 647 (3) (171 SE 225).

*Judgment reversed. Sognier, C. J., and Cooper, J., concur.*

DECIDED MARCH 13, 1992 —
RECONSIDERATION DENIED MARCH 25, 1992.

*Williams & Sammons, Angela W. Sammons, Walter G. Sammons, Jr.,* for appellant.

*Jones, Cork & Miller, Jerry A. Lumley, Kelly M. McDonald,* for appellee.