A92A2135. McGINTY v. GOLDENS' FOUNDRY & MACHINE COMPANY et al.
(430 SE2d 185)

ANDREWS, Judge.

McGinty appeals the grant of summary judgment to Goldens' Foundry & Machine Company (Goldens) on his slip and fall claim.

1. "On summary judgment, movant has the burden of showing there is no genuine issue as to any material fact and that he is entitled to a judgment as a matter of law. When, as in the instant case, movant is the defendant, he has the additional burden of piercing the plaintiff's pleadings and affirmatively negating one or more essential elements of the complaint. In ruling on a motion for summary judgment, the opposing party should be given the benefit of all reasonable doubt, and the court should construe the evidence and all inferences and conclusions arising therefrom most favorably toward the party opposing the motion. [Cit.] . . . Thus, summary judgment is appropri-

ate when the court, viewing all the facts and reasonable inferences from those facts in a light most favorable to the non-moving party, concludes that the evidence does not create a triable issue as to each essential element of the case. [Cit.]" *Demarest v. Moore*, 201 Ga. App. 90, 92 (1) (410 SE2d 191) (1991).

So viewed here, the facts were that McGinty worked for Dixie Tank Lines, a trucking company which delivered silicate to Goldens' Foundry for use in the foundry process. McGinty had made the delivery two or three times prior to the time when he was injured. On January 11, 1989, McGinty drove his load to the foundry entrance and was met there by Goldens' employee Hammond who worked in the finishing department but also helped guide the truck back to the hookup area where the tanker of silicate is pumped into the foundry. Hammond did so on that occasion as he had on McGinty's prior visits. There were present in the unloading area a number of flasks, which are large forms used to make iron molds. From the photographs in the record the flasks appear to be at least four feet by four feet and must be moved by forklift. The flasks had been moved from the finishing room by the night crew and were going to be used again that day in the molding process. McGinty got out of his truck and hooked up an air hose used to force the silicate from the tanker. This hose was located on the driver's side of the truck. McGinty then crouched and went under the tanker to the passenger side in order to hook up the hose that would transfer the silicate. The flasks were located on that side of the truck and were within two to three feet of the side of the truck. Asked if he saw the flasks when he drove up, McGinty stated: "You couldn't help but see them." McGinty and Hammond discussed moving the flasks from the unloading area, but Hammond stated there was no place else to put them.

The hose used to transfer the silicate is pulled from a tube on the side of the tanker and attached to the tanker and receptacle. If the hose end hits the ground in this process, it necessitates cleaning the hose to avoid contaminating the silicate. McGinty had asked Hammond to stand at one end and catch the hose as he pulled it out of the tube so that it would not become contaminated. McGinty then began pulling the hose, walking backwards with it as was his routine. McGinty said he did it this way rather than pulling it forwards so that he could watch Hammond and make sure he caught the end. He needed Hammond to guide his backward movement. McGinty fell over one flask and landed on another, injuring his back. Immediately, prior to his fall, Hammond did yell, "Watch it."

If, as argued by McGinty and supported by Hammond's statements, Hammond, as Goldens' employee had voluntarily undertaken to guide McGinty's backward movement so that he maneuvered it safely, his failure to do so would be negligence.

"[O]ne who undertakes to do an act or perform a service for another has the duty to exercise care, and is liable for injury resulting from his failure to do so, even though his undertaking is purely voluntary or even though it was completely gratuitous, and he was not under any obligation to do such act or perform such service, or there was no consideration for the promise or undertaking sufficient to support an action ex contractu based thereon." *Stelts v. Epperson*, 201 Ga. App. 405, 407 (411 SE2d 281) (1991), citing *Huggins v. Aetna Cas. &c. Co.*, 245 Ga. 248 (264 SE2d 191) (1980). See also *Universal Underwriters Ins. Co. v. Smith*, 253 Ga. 588, 589 (322 SE2d 269) (1984); *Blossman Gas Co. v. Williams*, 189 Ga. App. 195, 197 (1) (375 SE2d 117) (1988).

Therefore, it was error to grant summary judgment to Goldens.

2. Our decision in Division 1 makes unnecessary consideration of the remaining enumerations of error.

*Judgment reversed. Beasley, P. J., and Johnson, J., concur. Birdsong, P. J., not participating.*

DECIDED MARCH 19, 1993 —
RECONSIDERATION DENIED MARCH 30, 1993 ▇▇▇▇▇▇

*Robert H. Benfield, Jr.*, for appellant.
*Hatcher, Stubbs, Land, Hollis & Rothschild, James E. Humes II*, for appellees.