A04A0022. GREENSBORO FORD, INC. v. FORD MOTOR COMPANY.
(600 SE2d 631)

BARNES, Judge.

Greensboro Ford, Inc. sued Ford Motor Company (Ford), alleging that Ford breached the parties' dealership contract in a variety of ways. After extensive discovery, the trial court granted summary judgment to Ford on all of Greensboro Ford's claims, and Greensboro Ford appeals. For the reasons that follow, we affirm the trial court's judgment.

On February 3, 1988, Greensboro Ford entered into a sales and service agreement contract with Ford by which Greensboro Ford became a Ford dealer. Greensboro Ford ceased operating the business in late 1992, and Ford formally terminated the dealership agreement in June 1993. Another entity, Johnson Ford, subsequently began operating a satellite dealership in Greensboro Ford's old location. In July 1997, Greensboro Ford and its president, Randy Jackson, filed suit against Ford and Johnson Ford, seeking a temporary and

---

[8] See *Dandy v. State*, 238 Ga. App. 435 (1) (518 SE2d 907) (1999).
[9] *Williams v. State*, 262 Ga. App. 473, 474 (585 SE2d 751) (2003).

permanent restraining order to prevent Johnson Ford from continuing to operate its Greensboro location. Greensboro Ford also alleged that Ford had breached its contract, asserted a third-party beneficiary claim against Johnson Ford, and sought attorney fees, alleging bad faith and stubborn litigiousness.

Ford filed its first motion for summary judgment, which the trial court granted in part and denied in part. Specifically, the court granted summary judgment to Ford on Greensboro Ford's claim that the termination was improper, and held that Michigan law governed the contract. It denied Ford's motion regarding Greensboro Ford's breach of contract claims.

On appeal, this Court affirmed the denial of summary judgment on Greensboro Ford's contract claims and reversed the trial court's grant of summary judgment regarding the choice of law and the contract termination. *Greensboro Ford v. Ford Motor Co.*, 256 Ga. App. 520 (568 SE2d 758) (2002). We held that, although the parties' agreement specifically provided that it was to be construed under Michigan law, public policy considerations weighed against applying Michigan law in this case. Id. at 522-523 (1). The case returned to the trial court for further proceedings.

On remand, the parties conducted extensive discovery. Ford then brought a second motion for summary judgment on all counts, which the trial court granted in a one-sentence order. On appeal, Greensboro Ford contends that the trial court erred in granting summary judgment to Ford because genuine issues of material fact exist regarding its claims. Those claims are: (1) that Ford breached the dealer agreement by refusing to approve prospective purchasers; (2) that it improperly terminated Greensboro Ford as a dealer; (3) that it improperly awarded a dealership to another dealer within Greensboro Ford's locality; and (4) that it owes money to Greensboro Ford for the repurchase of its parts, signage, tools, and equipment.

On appeal we review the trial court's grant of summary judgment de novo to determine whether the evidence, viewed in the light most favorable to the nonmoving party, demonstrates a genuine issue of material fact. Summary judgment is proper only when no issue of material fact exists and the moving party is entitled to judgment as a matter of law. *Preferred Real Estate Equities v. Housing Systems*, 248 Ga. App. 745 (548 SE2d 646) (2001).

1. Greensboro Ford contends that genuine issues of material fact exist regarding whether Ford breached its dealer agreement by unreasonably withholding approval of prospective purchasers. In support of its argument, we note that Greensboro Ford cites extensively to its complaint. Evidence submitted in opposition to a motion for summary judgment must be competent and admissible to raise a genuine issue of material fact. *Achor Center v. Holmes*, 219 Ga. App.

399, 401 (1) (465 SE2d 451) (1995); *Simmons v. Blue Cross &c.*, 176 Ga. App. 767, 768 (2) (337 SE2d 764) (1985). "[A] party opposing the motion may not rely upon his pleadings alone, whether conclusory or not, where the motion is properly supported by the movant." *Guthrie v. Monumental Properties*, 141 Ga. App. 21, 23 (2) (232 SE2d 369) (1977).

Greensboro Ford also cites to the affidavits of its president, Jackson, and its general manager, both of whom asserted that they presented to Ford five individuals who were willing to buy the dealership. The general manager stated that they "could never get approval from Ford Motor Co. for any of them." Ford, on the other hand, cited to the general manager's subsequent deposition in which he stated that no prospective purchaser ever applied to Ford to be approved as the Greensboro Ford dealer, because no one at Greensboro Ford knew how to obtain an application to become a Ford dealer. In the owner's deposition, he again testified that Ford would not approve any of these prospective buyers. He then stated regarding one buyer that Ford would never send an application, said another buyer talked to Ford directly "and never could get anything done with them," said he never saw the paperwork a third and fourth prospect said they submitted to Ford, but Ford would not approve either of them. Finally, Greensboro Ford's owner said that after Greensboro had closed its operations, the owner was negotiating to sell the dealership to Johnson Ford when Ford stepped in and gave Johnson Ford the franchise, leaving him with nothing to sell. Two of the prospective purchasers testified by affidavit and deposition that neither ever had a contract with Greensboro Ford or its owner to buy the dealership, and never sought approval from Ford to obtain the franchise.

Ford's sales development manager during this time period testified that in 1991 and 1992, he received a number of calls from Greensboro Ford's owner and from prospective buyers about selling the franchise. In response to those inquiries, Ford specified the documents it needed to consider the deal, but these "aborted buy-sell attempts . . . never came to fruition, they never matured, never went beyond just the simple chatting phase."

In light of this evidence that no one ever completed the paperwork for Ford to consider any buy-sell agreements, Greensboro Ford's claim against Ford for breaching its dealer agreement by unreasonably withholding approval of prospective purchasers must necessarily fail. The trial court did not err in granting summary judgment to Ford on this point.

2. Greensboro Ford next argues that Ford had no basis for terminating it as a dealer, and that Ford's notice of termination was defective. Ford responds that, among other reasons, it properly

terminated Greensboro Ford's dealership because the company had ceased to operate. It further responds that it gave Greensboro Ford proper notice of the termination.

The "Termination or Nonrenewal of Agreement" portion of the parties' contract provided:

> The following represent events which are substantially within the control of the Dealer and over which the Company has no control, and which are so contrary to the intent and purpose of this agreement as to warrant its termination or nonrenewal: . . . failure of the Dealer for any reason to function in the ordinary course of business, or to maintain the DEALERSHIP OPERATIONS open for business during and for not less than the hours customary in the trade and lawful in the DEALER'S LOCALITY. . . .

Greensboro Ford's owner testified he stopped operating the business in approximately November 1992. The general manager also testified that the business shut down at that time. The mortgage lender foreclosed on the property in October 1992. Ford formally terminated the dealership in June 1993, and no evidence in the record establishes that Greensboro Ford was an ongoing operation at the time. While Greensboro Ford argues that the other reasons Ford gave for terminating the dealership were invalid, it does not address this point, which we find dispositive. The trial court did not err in granting summary judgment to Ford on Greensboro Ford's claim that Ford had no basis for terminating the dealership agreement.

Greensboro Ford further contends that Ford's termination was procedurally improper, because it failed to send prior written notice to the dealer. Instead, Ford sent the termination notice to Greensboro Ford's previous location, and it was returned to the company. Ford responds that (1) the previous location was the location of record, and that Greensboro Ford was never given permission to relocate its business; (2) it sent a copy of the letter to the dealer at his home address; and (3) it sent a copy to Greensboro Ford's attorney. It supports these responses with evidence in the record, and Greensboro Ford has not rebutted them.

3. Greensboro Ford contends that Ford improperly awarded a dealership to another dealer within Greensboro Ford's locality. The evidence establishes that Ford appointed Johnson Ford to operate a satellite dealership in Greensboro Ford's old location in August 1993, after Ford terminated Greensboro Ford's dealership. Greensboro Ford bases this argument on its contention that Ford never terminated its dealership, and because that contention is meritless as

discussed in Division 2, its claim Ford improperly awarded the dealership to another entity is also meritless.

4. Finally, Greensboro Ford asserts that Ford owes money to Greensboro Ford for the repurchase of its parts, signage, tools, and equipment. In its complaint, Greensboro Ford alleged that Ford breached its contract by failing to purchase or repurchase Greensboro Ford's parts inventory, signs, special tools, and equipment. The parties' contract provided that, "upon termination or nonrenewal of this agreement by the Company, the Dealer may elect as provided in paragraph 23 . . . to have the Company purchase or accept upon return from the Dealer, in return for his general release specified in paragraph 23," vehicles, genuine parts, dealer's signs, special tools, and equipment. Paragraph 23 of the agreement addresses the procedures involved in making a tender or demand of these benefits, and provides that the Dealer simultaneously with the receipt of benefits execute and deliver a general release to Ford.

Ford also presented copies of its Dealership Identification Agreement with Greensboro Ford, which provides that Ford installs and owns all of its brand signs, and that Ford installs and the dealer pays for all supporting signs, such as "Service," "Leasing," "Used Car," and dealer name signs.

In July 1993, Ford offered Greensboro Ford $74,921 for the "genuine parts," signs, and special tools, noting in its certified letter to the owner that, due to the signs' age, it had assessed them at 30 percent of their original cost. Ford's letter also indicates that it included a release form in accordance with the contract terms. Nothing in the record shows that Greensboro Ford returned the release form, and the owner testified that "[a]fter we couldn't get this thing settled and everything, [the accountant] actually said he donated them to what he called charity and wrote it off, I think is what he ended up telling me." No vehicles were left at the dealership, because Chrysler Credit Company, which had financed Greensboro Ford's floor plan, had seized and impounded the inventory until it was sold at auction. Further, the mortgage lender foreclosed on Greensboro Ford's facility at its original location in late 1992, and the business relocated. When it relocated, the dealership was no longer receiving cars or parts from Ford. Greensboro Ford presented no evidence as to the value of the items it contends that Ford should have paid it for.

Having reviewed the trial court's grant of summary judgment de novo to determine whether the evidence, viewed in the light most favorable to the nonmoving party, demonstrates a genuine issue of material fact, we conclude that the evidence does not demonstrate the existence of an issue for trial on this claim. Therefore the trial court

did not err in granting summary judgment to Ford. *Preferred Real Estate Equities v. Housing Systems*, supra, 248 Ga. App. at 745.

5. In light of the previous divisions, Greensboro Ford's final argument that its claims under the Georgia Motor Vehicle Franchise Practices Act, OCGA § 10-1-620 et seq., were not barred by the running of the statute of limitation is moot.

*Judgment affirmed. Blackburn, P. J., and Mikell, J., concur.*

DECIDED MAY 19, 2004 —
RECONSIDERATION DENIED JUNE 14, 2004 — 

*William R. Oliver*, for appellant.

*Sutherland, Asbill & Brennan, John H. Fleming, Jackie L. Volk*, for appellee.